**Stephen D. ZOOK, Plaintiff,**

v.

**Joseph T. BROWN, William V. Mosher, and, Champaign County, Defendants.**

No. 82–2020.

United States District Court, C.D. Illinois, Springfield Division.

Oct. 7, 1983.

Edward H. Rawles, Reno, O'Byrne & Kepley, Champaign, Ill., for plaintiff.

Steve Helm, Dukes, O'Rourke, Stewart, Martin & Helm, Danville, Ill., for defendants.

## ORDER

J. WALDO ACKERMAN, Chief Judge.

This case concerns Plaintiff's claim that Defendants have prohibited his speech in violation of his constitutional rights. Both parties have filed motions for summary judgment.

In October of 1981, there was a public debate over ambulance services in Champaign County. The sheriff of Champaign County (Defendant Brown) was privately lobbying local governments to regulate ambulance rates. Apparently, this lobbying effort was not revealed to the general public or other members of the sheriff's department. On November 9, 1982, Plaintiff wrote a letter to a local paper endorsing the services of a particular ambulance service. The letter described the Plaintiff as impressed with the services of the ambulance service, and it described the ambulance service's equipment as "second to none." The letter identified Plaintiff as a ten year veteran of the Champaign County Sheriff's Department. This letter was published in the November 9th edition of the Champaign-Urbana *News Gazette*.

On November 16, 1982, Plaintiff was issued an official letter of reprimand. The letter of reprimand stated Plaintiff's conduct, in writing the November 9th letter, was in conflict with Sheriff Department Standards 2.19 and 4.4. The letter explained the need for the sheriff's department to maintain an appearance of impartiality in its relations with ambulance services. After Plaintiff requested that Defendant Brown remove the letter of reprimand from his personnel file, Defendant Brown contacted the Champaign County State's Attorney's office for an opinion on the propriety of his actions. The assistant state's attorney, after researching the issue, opined that she could not definitely ascertain the legality or illegality of the sheriff's action. Defendants reprimanded Plaintiff even though there was no actual disruption in the operation of the sheriff's department or damage to its morale.

On December 4, 1981, the sheriff's department amended its rules of conduct to prohibit certain political activity. Rule of Conduct 4–5 states:

Political Activity

Officers shall not actively engage in political party affairs or political campaigns.

While Plaintiff's conduct has not been officially criticized for violating this rule, he seeks a ruling that it is an unconstitutional infringement on his First Amendment rights.

There are three issues to be resolved at the summary judgment stage of this litigation. One, the constitutionality of Defendants' actions in reprimanding Plaintiff's conduct. Two, the availability of injunctive relief against pending sheriff department rules and standards. Three, the availability of a good faith immunity defense for the individual Defendants.

Plaintiff was disciplined for violating Standards 2.19B and 4.4B (currently these dictates are labeled Rules of Conduct 2–27(c) and 4–4(b), respectively). Rule of Conduct 2–27(c) provides:

Use of name, photograph or title: Officers shall not authorize the use of their names, photographs, or official titles which identify them as officers, in connection with testimonials or advertisements of any commodity or commercial enterprise, without the written approval of the sheriff.

Rule of Conduct 4–4(b) states:

When acting as representatives of the department, officers shall receive approval from the sheriff before they address public gatherings, appear on radio or television, prepare any articles for publication, act as correspondents to a newspaper or periodical release, or divulge investigative information or any other matters of the department. Officers may lecture on police or other related subjects only with the prior approval of the sheriff.

Plaintiff contends that the application of these rules is an unconstitutional infringement on his First Amendment freedoms.

■ At the outset, it is recognized that public employment may not be conditioned on the unreasonable suppression of legitimate First Amendment rights. *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). The First Amendment rights of public employees, however, are not absolute and must yield when overriding interests of public policy are at stake. *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1946). The government has an interest in regulating the conduct and "speech of its employees that differs significantly from those it possesses in connection with the regulation of the speech of the citizenry in general". *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973) (*quoting Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

■ In this case the sheriff's department attempts to foster an image of impartiality in its relations with emergency services. It is without question, and I do not understand Plaintiff to argue otherwise, that an

image of impartiality is an appropriate and legitimate goal of Defendants. For example, Defendants could prohibit employees from acting as advertising representatives for a home security system. This would be an appropriate prohibition, even though it would severely restrict employees exercise of their First Amendment freedoms. Likewise, Defendants could prohibit their employees from endorsing a particular detective agency. Thus, there are competing interests at stake. The *Pickering* court recognized this problem, and held that "the interests of the employee, as a citizen, in commenting upon matters of public concern must be balanced against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering, supra,* at 568, 88 S.Ct. at 1374.

It is not only important for the sheriff's department to maintain impartial relations with commercial enterprises delivering emergency services, but it is also important that the sheriff's department avoid any appearance of partiality in its relations with the emergency services. *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 565, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973); *Otten v. Schicker,* 492 F.Supp. 455, 458 (E.D.Mo.1980). An otherwise innocent act, such as praising a particular emergency service's actions, could be perceived by the public as an endorsement. The sheriff's department has a legitimate concern in how the public perceives it. Thus, the sheriff has an interest in limiting deputies' opportunities to contribute to the public debate on ambulance services that is significantly greater than its interest in limiting a similar contribution by any member of the general public. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 414, 99 S.Ct. 693, 695, 58 L.Ed.2d 619 (1979).

■ Further, police department regulations, while not directly analogous to those of the military service, are entitled to considerable deference because of the state's substantial interest in creating and maintaining an efficient organization to carry out the important duties assigned by law. *Kelley v. Johnson,* 425 U.S. 238, 246 n. 11, 96 S.Ct. 1440, 1445 n. 11, 47 L.Ed.2d 708 (1976). Therefore, the public's interest in safety and order justifies a restriction on a law enforcement agency's employees that might not be tolerated if imposed on the employees of a different government agency. *Byrd v. Gain,* 558 F.2d 553, 554 (9th Cir.1977).

■ Defendant Brown's private lobbying of local governments to regulate ambulance rates is inconsequential in the determination of this case. His conduct was not an endorsement of a particular ambulance service, nor was his conduct made public. Thus, it was not possible for the public to perceive Defendant Brown's conduct as partial to a particular ambulance service. His conduct did not violate the explicit provisions of the rules, or the implicit rationale underlying them.

Accordingly, the sheriff department's regulations are constitutional as applied to Plaintiff's conduct. Next to be addressed are the questions raised by Plaintiff's arguments that the regulations are overbroad and vague.

■ A statute is overbroad if it purports to reach protected as well as unprotected conduct. *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973). Since in my opinion the sheriff's department may constitutionally restrict Plaintiff from endorsing an ambulance service, the rule is not overbroad in proscribing Plaintiff's activity in this case. In order to attack the regulations as overbroad on their face, Plaintiff must demonstrate that he has standing to raise the rights of others, those who may be chilled in the exercise of their constitutional rights by the allegedly overbroad sweep of the regulation's language. A litigant normally lacks standing to assert the rights of others. In the First Amendment area, there is an exception to this rule, but this exception does not confer standing to assert the rights of others where there are a substantial number of situations to which

the regulation might validly apply. *Broadrick, supra,* at 609–18, 93 S.Ct. at 2914–19. In this case, Rules of Conduct 2–27(c) and 4–4(b) have a substantial legitimate sweep; therefore, Plaintiff lacks standing to assert the rights of others. If the rules unconstitutionally infringe the rights of others on the edges of their application, those persons can make the challenge in the terms of a concrete dispute. In this way, the Court need not base its decision on hypothetical infringements. *Paulos v. Breier,* 507 F.2d 1383, 1387 (7th Cir.1974). In sum, this is not the case where the existence of the rules restrict the breathing space required by the First Amendment. In short, the rules would not cause others, not before the Court, to refrain from constitutionally protected speech or expression. *See, e.g., Broadrick, supra,* 413 U.S. at 612, 93 S.Ct. at 2915.

■ Plaintiff also contends that the rules at issue are unconstitutionally vague. The rules are not so vague that "men of common intelligence must necessarily guess at [their] meaning." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The rules plainly prohibit an officer from allowing his name to be used in an endorsement that identifies him as an officer. A reasonable person would have fair notice that a deputy was prohibited by the rules from endorsing a commercial enterprise and identifying himself as an officer. While the rules may not have perfect specificity, the English language is limited with respect to being specific and manageably brief. *Letter Carriers,* 413 U.S. at 578–79, 93 S.Ct. at 2897.

■ Since Plaintiff had fair warning that discipline would be imposed for his conduct, he is not entitled to attack the rules because their language would not give fair warning to others which might be within their broadest scope. *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974). If there is any difficulty with the vagueness of these rules, it will be time enough to consider it when raised by someone whom it concerns. *United States v. Wurzvach,* 280 U.S. 396, 399, 50 S.Ct. 167, 168, 74 L.Ed. 508 (1930).

■ Plaintiff also argues that Rule of Conduct 4–5 is unconstitutionally vague and overbroad, and that the rule unconstitutionally infringes protected rights.[1] The rule only restricted active participation in political party affairs or campaigns. It did not prohibit public or private expressions of opinions on public affairs that were not an objective of party action. In this regard, the rule closely parallels the prescriptions of the Hatch Act which has language similar to Rule 4–5.[2] In *Letter Carriers, supra,* 413 U.S. at 556, 93 S.Ct. at 2886, the United States Supreme Court stated that the Hatch Act violated neither the First Amendment, nor any other provision of the constitution. *See also Mitchell, supra.* A major proposition of Rule 4–5, and of the Hatch Act, is that laws should be executed without bias or partiality. *Letter Carriers, supra,* at 565, 93 S.Ct. at 2890. To achieve this goal, government employees cannot be allowed to undertake a substantial role in partisan politics. Thus, the *Letter Carriers* court affirmed the basic holding of *Mitchell,* that "plainly identifiable acts of political management and political campaigning on the part of federal employees may constitutionally be prohibited." *Letter Carriers, supra,* at 567, 93 S.Ct. at 2891. In my opinion a local government has the same right to prohibit its employees from undertaking an active part in political party affairs or campaigns. *Compare Bart v. Telford,* 677 F.2d 622 (7th

---

1. Rule 4–5 was subsequently amended and Plaintiff concedes that injunctive relief is no longer appropriate. Apparently, Plaintiff still seeks damages for the prior application of the rule. Under these circumstances, for the purposes of the motions for summary judgment, I will analyze the constitutionality of the rule prior to its amendment.

2. The Hatch Act provides, in pertinent part: "An employee in an executive agency ... may not ... take an active part in political management or in political campaigns." 5 U.S.C. § 7324(a)(2).

Cir.1982). (Local government was justified in compelling an employee to take a leave of absence while running for political office.)

■ The final issue before the Court concerns the good faith immunity defense of Defendants. Because the court has previously held that there was no violation of Plaintiff's First Amendment rights, it need not reach the question of Defendants' good faith immunity. Since both parties have written adroit briefs on the subject, and further facts are unnecessary, the court will express its decision on this issue. As it concerns the good faith immunity defense, the following facts are not in dispute. Defendant Brown contacted the state's attorney's office for an opinion on his disciplining of Plaintiff. The state's attorney's office responded that the propriety of Defendant's actions was unclear. The state's attorney could not tell with any accuracy whether Defendant Brown's actions were correct or incorrect. The state's attorney also reviewed Rule of Conduct 4–5's prohibition on political activity before it went into effect. The state's attorney was of the opinion that there was no unconstitutional infirmity in this rule. Additionally, at the time the sheriff's department promulgated the Rule 4–5, the following statute was in effect:

> No deputy sheriff in the county police department and no employee in the County Department of Corrections shall participate in any manner in the activities or interest of any political party or of any candidate for a public office or for the nomination thereof, nor participate in any manner in any political campaign for the nomination or election of candidates for a public office. Violation of any provision hereof shall be cause for removal of any deputy sheriff or employee so offending. Nothing contained herein shall be deemed to interfere with the right of any person to vote for any candidate and upon any issue as his reason and conscience may dictate.

Ill.Rev.Stat. ch. 125, § 63. This statute remains in effect today.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (June 24, 1982), the court outlined the appropriate test to determine the existence of qualified good faith immunity. In *Harlow,* the court established the objective aspect of the test as the sole criteria. The government employee is sheltered from civil liability if his conduct does not violate basic, clearly established constitutional rights which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738. These clearly established rights do not appear in this case. In all instances, Defendants' actions were reviewed by competent attorneys. The record, and the decision in this case, contradicts any conclusion that clearly established rights existed. If an attorney cannot determine that the law forbids certain government action, it cannot be found that individuals untrained in the nuances of constitutional law should have known that their conduct was identified as unlawful. Defendants have easily met the burden of proving that they "neither knew or should have known of the relevant legal standard." *Id.* Under *Harlow,* summary judgment for Defendants is appropriate in these circumstances on this question.

For the reasons previously stated, the Court grants Defendants' motion for summary judgment and judgment is entered for Defendants.