**Meredith COLEMAN,
Plaintiff-Appellant,**

v.

**Nyal FRANTZ, Sheriff of Wells County, Indiana, Defendant-Appellee.**

No. 84-1248.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1984.

Decided Jan. 30, 1985.

---

Cudahy, Circuit Judge, filed a concurring opinion.

Myron L. Gordon, Senior District Judge, sitting by designation, filed a dissenting opinion.

Joseph S. Northrop, Mills & Northrop, Huntington, Ind., for plaintiff-appellant.

James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, Ind., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and GORDON, Senior District Judge.*

CUMMINGS, Chief Judge.

Plaintiff Meredith Coleman filed this civil rights action against Nyal Frantz, the Sheriff of Wells County, Indiana, pursuant to 42 U.S.C. § 1983. The district court granted defendant's motion for summary judgment. 593 F.Supp. 28. Plaintiff appeals on the grounds that the district court erroneously failed to recognize a violation of his constitutional rights and improperly afforded the defendant a qualified immunity from Section 1983 liability. For the reasons set forth below, we affirm the summary judgment.

I

■ As noted, defendant is the Sheriff of Wells County, Indiana, and he occupied that post at all times relevant to this case. On June 23, 1981, the Wells Circuit Court issued a bench warrant for the arrest of plaintiff, based upon defendant's affidavit of "probable cause" credited by the county court (p. 8 of first opinion below, R. Item 31; 593 F.Supp. at 30). The "legally sufficient and valid arrest warrant" (593 F.Supp. at 32) instructed the Sheriff to arrest the plaintiff on a charge of receiving stolen property and to take him before that court "instanter." Bond was set by the court at $10,000. Defendant turned himself in at the Wells County Jail on June 30, 1981. The Sheriff read him the bench warrant naming the offense charged, informed him of the amount of his bail, and incarcerated him for want of making bail. The next day the defendant returned service of the warrant to the Wells Circuit Court through its clerk, as is customary there, thus notifying the court of Coleman's status. Plaintiff remained in the Sheriff's custody until July 18, when he was released by the Sheriff at the direction of the prosecuting attorney's office. Until then, the prosecutor had taken no action despite his early knowledge of the matter. During his detention the plaintiff asked the Sheriff several times when he was going to court and protested his innocence. In turn the Sheriff repeatedly called the prosecutor's office to arrange for defendant's "first appearance,"[1] but did

---

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. Most states have statutes that require a prompt appearance of arrested persons before a judicial officer. A few statutes impose a specific time limit within which the arrestee must be produced, but most express a timeliness requirement utilizing terms such as "without unnecessary delay" or "forthwith." See A.L.I., Model Code of Pre-Arraignment Procedure 577–579, Appendix I (1975).

A first appearance takes place after the complaint has been filed and reviewed so that the arrestee is then a formal defendant in a criminal prosecution. Although the elements vary from state to state, the first appearance normally consists of a judge or magistrate (1) ensuring that the person before him is the person named in the complaint; (2) informing the defendant of the charge in the complaint; (3) informing the defendant of the right to remain silent and warning him that anything he says in court or to the police may be used against him at trial; (4) informing the defendant of the right to appointed counsel if he is indigent, determining if the defendant is indigent, and when appropriate at least initiating the process of providing coun-

not receive a reply or any action until July 18th, the date the prosecutor first told him to release plaintiff.

Plaintiff relies upon the language of the form bench warrant stating that the Sheriff "have [Mr. Coleman's] body before the Judge of Wells Circuit Court, instanter, then and there to answer the State of Indiana, on the charge of Receiving Stolen Property I.C. 35–43–4–2(b) * * *," and on Indiana Code § 35–1–8–1(a) [2] as placing a duty on the Sheriff to bring about a "first appearance." That Section of the Indiana Code states that *"[w]hen an officer arrests an accused, he shall take the accused before the court issuing the warrant"* for docketing by the court (emphasis supplied). No particular time limit is specified.

Throughout the 18-day detention plaintiff had access to a telephone, to visitors, and to the Sheriff and his staff. Plaintiff also spoke with an attorney during his first week of detention, but did not retain the attorney as counsel. He was not mistreated nor denied necessary items while incarcerated. See 593 F.Supp. at 30. There is no indication from the record that he ever requested that an attorney be provided for him because he could not afford counsel. The criminal charge against him was dismissed on August 23, 1982.

The June 1983 complaint sought $10,000 compensatory and $10,000 punitive damages, attorney's fees and costs. The district court granted summary judgment in favor of the defendant on the Section 1983 count after reviewing the pleadings, depositions and other documentary evidence. Simultaneously a pendent state count was dismissed with prejudice but is not involved on appeal. The court held that Sheriff Frantz was shielded from Section 1983 liability by a qualified immunity, and alternatively, that no violation of the United States Constitution took place. Two opinions were issued, the second after considering plaintiff's response to the motion for summary judgment. Each resulted in summary judgment for the Sheriff and in dismissal of plaintiff's pendent state claims.

## II

█ The preliminary inquiry in any § 1983 action must

focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or law of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420. The first of these elements was not contested by the defendant. It is important for us to examine the second even though our holding with respect to qualified immunity would constitute an adequate basis upon which to affirm the judgment below. As was stated by this Court in *Egger v. Phillips*, 710 F.2d

---

sel for the indigent; (5) setting of bail. See W. LaFave & J. Israel, Criminal Procedure § 1.4(i) (1984).

The Indiana "first appearance" should be distinguished from a "preliminary hearing" which involves a hearing before a judge in the accused's presence, prior to indictment, during which the State is required to produce sufficient evidence to establish probable cause. · See Fed. R.Crim.P. 5.1; *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387. That stage had never been reached in this case.

**2.** Ind.Code Ann. § 35–1–8–1(a) (Burns 1979) (repealed 1982). Ind.Code § 35–33–7–4 (1982) re-

places I.C. § 35–1–8–1 and requires that an arrested person be brought "promptly" before a court. Ind.Code § 35–33–2–2 (1982) currently prescribes the arrest warrant form and instructs the arresting officer to bring the arrestee before the court "without unnecessary delay." Another statute, Ind.Code Ann. § 18–1–11–8 (Burns 1979) (repealed 1982), required city police officers to bring an arrested person before a court, ordinarily within 24 hours of arrest. Plaintiff concedes that said statute does not apply to Sheriff Frantz. See plaintiff's memorandum of law in response to defendant's motion for summary judgment at p. 5, R. Item 28.

292, 315 n. 27 (7th Cir.1983) (*en banc*), "to dispose of the case solely on the ground that at the time of the alleged constitutional violation the right in question was not clearly established [thus rendering defendant immune, see discussion *infra* p. 725] would leave the status of such right in limbo." See Nahmod, *Constitutional Wrongs Without Remedies: Executive Official Immunity*, 62 WASH U.L.Q. 221, 259 (1984).

Plaintiff first contends on appeal that his detention violated a "nationally recognized right for arrested persons to be brought before a magistrate without unreasonable delay" based upon the Fourth Amendmant's prohibition of "unreasonable * * * seizures" and the Fourteenth Amendment's prohibition of deprivation of liberty without due process of law and its equal protection clause. Despite plaintiff's arguments to the contrary, the issue of an arrestee's right to a prompt first appearance before a judicial officer is largely one of first impression. The notable lack of authority regarding this important question is apparently explained by structural limitations on the opportunity afforded litigants to raise the issue in federal courts. See *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1139 n. 7 (4th Cir.1982) (the revivification of 42 U.S.C. § 1983 created a means of contesting the issue). Only the Fifth Circuit has taken the position that the lack of a prompt first appearance before a judicial officer can never violate the Constitution. See *Perry v. Jones*, 506 F.2d 778, 780–781 (5th Cir.1975); *Anderson v. Nosser*, 438 F.2d 183, 196 (5th Cir.1971), modified *en banc*, 456 F.2d 835 (1972). However, these cases preceded *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433, and *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, discussed *infra,* and therefore need not detain us. The district court ruled that on the specific facts of this case, where there has been a valid determination of probable cause and a warrant issued, and where the plaintiff had access to an attorney, a telephone and to visitors, there

was no constitutional violation (593 F.Supp. at 34).

We hold that the plaintiff's eighteen-day detention without an appearance before a judge or magistrate was a deprivation of liberty without due process of law. State action which "shocks the conscience" of the court, *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183, or which is highly offensive to the "concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, has caused the Supreme Court to find a denial of due process. In *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54, the Court ruled that the Constitution required a judicial determination of probable cause as a prerequisite to an "extended restraint of liberty following arrest," and recognized that

> the consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationship.

The protracted incarceration of Mr. Coleman with its incident harms is constitutionally impermissible because it is wholly inconsistent with notions of "fundamental fairness" required of criminal prosecutions under the Due Process Clause, see, *e.g.*, *California v. Trombetta*, —— U.S. ——, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 and with the concept of "ordered liberty." See *Palko, supra.*

In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433, the Supreme Court reiterated its concern with "extended restraints of liberty following arrest," *Gerstein, supra,* in the context of arrests made pursuant to a valid warrant and following a judicial determination of probable cause. *Baker* ruled that no unconstitutional deprivation of liberty occurred where the plaintiff was arrested pursuant to a valid warrant, jailed for three days and then released when it was determined that the wrong man had been imprisoned. The sheriff involved had no duty under the Con-

stitution to "investigate independently every claim of innocence," nor to "perform an error-free investigation of such a claim." 443 U.S. at 146, 99 S.Ct. at 2695. The Court observed that because of the Sixth Amendment right to a speedy trial, "one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence." *Id.* at 144, 99 S.Ct. at 2694. Then applying a due process standard, the Court alternatively held that a three-day detention over a New Year's weekend did not amount to a deprivation of liberty without due process of law. *Id.* at 145, 99 S.Ct. at 2695. While *Baker* did not expressly adopt a due process standard, the Court apparently found such an analysis relevant, and we can discern no reason why prolonged detentions of this sort should be exempt from scrutiny under the requirements of due process.

The analysis utilized in *Baker* indicates that the duration of the detention and the burden placed on state officials in providing procedural safeguards are highly relevant to a constitutional examination of post-arrest detentions. The detention in *Baker* spanned three days and could only have been prevented by the institution of significant and burdensome investigative procedures by the defendant sheriff. In the present case, however, the plaintiff was incarcerated for nearly three weeks, in the face of repeated protests of innocence and requests to go to court, before the prosecutor ordered his release. Where first appearances are provided, the requirement that they be timely would place a relatively small burden on law enforcement and judicial officers. In light of the disturbing and unexplained factors before us, *Baker* supports, if not requires, our conclusion that plaintiff's 18-day detention was a violation of liberty without due process of law.

Almost every element of a "first appearance" under state statutes or the Federal Rules of Criminal Procedure serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent. The following is a listing of traditional components of a first appearance (see *supra* note 1) and the rights enforced by them: (1) inform the suspect of the charge—Sixth Amendment ("the accused shall enjoy the right * * * to be informed of the nature and the cause of the accusation"); (2) inform the defendant of the right to counsel and determine if the defendant is indigent and desires the assistance of appointed counsel—Sixth Amendment ("the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence"); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387; (3) inform the suspect of the right to remain silent under the privilege against self-incrimination—Fifth Amendment ("No person * * * shall be compelled in any criminal case to be a witness against himself"); *Miranda v. Arizona, supra;* (4) set or review bail—Eighth Amendment ("Excessive bail shall not be required"); *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1. An extended detention before a first appearance, whether or not there has been a valid determination of probable cause, substantially impinges upon and threatens all of these rights. The significant benefit resulting from the interposition of a neutral judicial officer into the post-arrest detention situation with regard to the protection of these rights cannot be ignored. Although the absence of a first appearance here may not have caused a specific violation of any one of these rights as they have been interpreted by the Supreme Court, the ultimate effect of the omission here must be deemed a denial of due process. The tremendous burden placed on a presumptively innocent person by this type of prolonged detention cannot be permitted without more regard for that person's basic rights under the Constitution.

*United States v. Ragan,* 176 F.2d 579, 584 (7th Cir.1949), does not preclude this holding. *Ragan* was a pre-*Baker* case and considered whether the failure to present

defendant (a convicted murderer sentenced to death) before a magistrate after arrest rendered the defendant's confession involuntary and thus inadmissible in evidence. *Ragan* concluded that because the confession was not a product of "intimidation, coercion, promises or oppressive and violent treatment," the failure to present the defendant to a magistrate did not amount to such a denial of fundamental fairness as to prevent a fair trial. *Id.* Whether the lack of a first appearance renders a confession involuntary presents a different question from the issue here. While the absence of a timely first appearance may not be a basis for the exclusion of evidence, its absence here for eighteen days surely runs counter to the Constitution under the Fourteenth Amendment. We recently so held under the Fourteenth and Fourth Amendments with respect to a 42-hour detention without a probable cause hearing. *Llaguno v. Mingey,* 739 F.2d 1186, 1196 (7th Cir.1984) (pending rehearing *en banc*). While there was a probable cause hearing before Coleman was placed in custody, the *Llaguno* decision is at least a forerunner of the result we reach today.

This opinion does not attempt to delineate every contour of a constitutional right to a timely first appearance under the Due Process Clause. To do so would be inconsistent with our reliance on *Rochin, supra.* Our holding today is limited to the extreme circumstances of this case. To specify after what period of time a given detention not accompanied by a first appearance becomes constitutionally infirm, or to outline which of the various elements of a first appearance are minimally necessary to satisfy the due process requirement would amount to inappropriate judicial legislation. In the case before us, none of the procedural protections afforded by a first appearance were ever granted the plaintiff over the course of his nearly three-week incarceration despite his protests of innocence, requests for a court appearance, and ultimate release.

But the conclusion that plaintiff suffered a violation of his constitutional rights does not end the inquiry. Under *Beard v. O'Neal,* 728 F.2d 894, 898 (7th Cir.1984), plaintiff must prove that the defendant caused the claimed constitutional violation. While it is doubtful that Coleman has carried that burden, we do not resolve this case on that ground. The qualified immunity available to the prosecutor from § 1983 liability in this situation (*infra* note 9) probably explains the bringing of this action solely against Sheriff Frantz despite the fact that the prosecutor's inaction caused plaintiff's injury. See *supra* p. 721. Nevertheless, the prosecutor's intransigence cannot, in our view, be transferred to the defendant who made every effort to secure a timely first appearance for plaintiff and whose actions were not plainly inconsistent with then applicable constitutional law. *E.g., Perry v. Jones, supra.*

### III

We affirm the district court judgment because the defendant is entitled to a qualified or good faith immunity. Under the standard set forth in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, government officials entitled to a qualified immunity "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Since Frantz did not violate any then clearly established constitutional right of which a reasonable person would have known, he was justified in asserting the qualified immunity defense.

The proper framework for determining the existence and nature of an immunity for defendants from Section 1983 liability was recently reiterated by the Supreme Court in *Tower v. Glover,* —— U.S. ——, 104 S.Ct. 2820, 81 L.Ed.2d 758. Justice O'Connor noted for a unanimous Court[3]

---

**3.** Four Justices concurred except in a statement by Justice O'Connor that there was no occasion to consider the abstention doctrine; they re-

that despite the silence of Section 1983 on the question of immunities, the Supreme Court since 1951 has consistently allowed certain "substantive doctrines of privilege and immunity" to limit liability thereunder. —— U.S. at ——, 104 S.Ct. at 2825. The Court reaffirmed the standard first enunciated in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, as the basic analysis for determining the existence of Section 1983 immunity. *Glover* repeated the *Imbler* standard and explained that "[i]f an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Glover,* —— U.S. at ——, 104 S.Ct. at 2825.[4]

■■■■ Executive officials as a general rule enjoy the protection of a qualified or good faith immunity.[5] See *Harlow v. Fitzgerald,* 457 U.S. at 807, 102 S.Ct. at 2732. Certain high level executives may enjoy an absolute immunity in particular circumstances, and are always afforded a broader "range of discretion" under the qualified immunity than "officials with less responsibility." *Id.* at 806, 102 S.Ct. at 2732; *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90.[6]

This Court has recognized qualified immunity for public officials acting within the scope of their responsibilities, noting that "principled and conscientious governmental decisionmaking * * * can only be achieved by affording government officials some measure of protection from personal liability arising out of the exercise of their discretion and the performance of required duties." *Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir.1982). See *Johnson v. Brelje,* 701 F.2d 1201, 1210 (7th Cir.1983). A number of cases, relying upon relevant Supreme Court cases that discuss the immunity issue, have held that sheriffs are entitled to assert a qualified immunity. See *Coleman v. Turpen,* 697 F.2d 1341, 1344 (10th Cir.1982) (qualified immunity available regarding claim involving sheriff's retention of suspect's money as evidence pursuant to Oklahoma statute); *Barrett v. Thomas,* 649 F.2d 1193, 1201 (5th Cir.1981), certiorari denied, 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (sheriff entitled to claim qualified immunity regarding his firing of employees supporting his opponent, but sheriff failed to plead immunity in timely fashion); *Taylor v. Mayone,* 626 F.2d 247, 254 (2d Cir.1980) (sheriff entitled to claim qualified immunity regarding incident involving pursuit and shooting at plaintiff); *Norton v. Liddel,* 620 F.2d 1375, 1382 (10th Cir. 1980) (sheriff entitled to claim qualified immunity concerning alleged conspiracy to perpetrate a malicious prosecution); *Douthit v. Jones,* 619 F.2d 527, 532–533 (5th Cir.1980) (sheriff entitled to assert qualified immunity with respect to wrongful incarceration claim); *Zook v. Brown,* 575 F.Supp. 72, 77 (C.D.Ill.1983) (sheriff entitled to qualified immunity regarding his

marked that abstention was never even raised. *Glover,* 104 S.Ct. at 2827.

**4.** In *Glover,* the Court ruled that a state public defender does not enjoy any immunity from Section 1983 liability. The Court based its decision on the fact that no common law immunity existed for public defenders in this country in 1871 (when the predecessor of Section 1983 was enacted) since the first public defender program did not begin here until 1914. *Glover,* —— U.S. at ——, 104 S.Ct. at 2825.

**5.** In light of the fact that there was a statutory duty imposed on the defendant by then I.C. 35–1–8–1(a) to take plaintiff before the Wells Circuit Court apart from any duty created by the warrant, an extension of absolute judicial immunity to the Sheriff in this situation (see *Steinpreis v. Shook,* 377 F.2d 282, 283 (4th Cir. 1967), certiorari denied, 387 U.S. 1057, 88 S.Ct. 811, 19 L.Ed.2d 858; *Fowler v. Alexander,* 340 F.Supp. 168, 171 (M.D.N.C.1972); *Haigh v. Snidow,* 231 F.Supp. 324, 326 (S.D.Cal.1964)) might not in itself be enough to shield the defendant from Section 1983 liability.

**6.** The Supreme Court elaborated on the common law basis for this immunity in *Scheuer,* 416 U.S. at 238–241, 238 n. 4, 94 S.Ct. at 1687–1688, 1688 n. 4, and concluded that the immunity did not conflict with the history or purposes of Section 1983. *Id.* at 243–247, 94 S.Ct. at 1690–1692.

t>>

disciplining of employee pursuant to Illinois statute).

Although the Supreme Court has never expressly decided the type of immunity to be accorded sheriffs, it has recognized the "traditional good-faith immunit[y] enjoyed by * * * sheriffs," *Owen v. City of Independence*, 445 U.S. 622, 643, 100 S.Ct. 1398, 1412, 63 L.Ed.2d 673. It seems logical to this Court and consistent with relevant Supreme Court authority on this subject to characterize a county sheriff as an official "with less complex discretionary responsibilities," *Harlow*, 457 U.S. at 807, 102 S.Ct. at 2733, required to "make decisions" and "implement decisions," *Scheuer*, 416 U.S. at 241–242, 94 S.Ct. at 1689, who is entitled to assert good faith or qualified immunity. As evidenced by the present case, a sheriff is commanded or enabled to act by statutes over which he has no control which require implementation and some degree of interpretation on his part. See *Coleman v. Turpen* and *Zook v. Brown*, both *supra*.

Plaintiff asserts that the qualified immunity is only available to public officials when their acts are "discretionary," and that in this instance Sheriff Frantz had no discretion in fulfilling his obligation to take plaintiff before the Wells Circuit Court. Therefore, it is claimed that the defendant is entitled to no immunity as to this Section 1983 action. Plaintiff appears to argue that the basis for the public officials' qualified immunity is the common law ministerial-discretionary distinction. But there is no evidence provided by the plaintiff or discovered by us indicating that the ministerial-discretionary distinction is the common law foundation for Section 1983 immunity.[7] Further, the Supreme Court has cast doubt upon the relevance of this common law doctrine to Section 1983 immunity considerations and upon the wisdom of utilizing the distinction as a basis for determining the existence of an immunity from Section 1983 liability.[8]

This Court also considers that as a matter of public policy, it would be unwise to engage in a case by case determination of Section 1983 immunity based upon the ministerial versus discretionary nature of the particular official act challenged. Not only would such an analysis require repeated judicial applications of the unclear ministerial-discretionary distinction, but more importantly it would do little to forward the purposes of the immunity. Qualified immunity implements "two mutually dependent rationales," *Scheuer*, 416 U.S. at 240, 94 S.Ct. at 1688, *viz.*, the need to "encourage the vigorous exercise of official authority" as required by the public good, *Butz v.*

---

7. Rather, the qualified immunity for public officials is based upon notions of the sovereign immunity doctrine that the "King can do no wrong." See *Scheuer*, 416 U.S. at 239, 239 n. 4, 94 S.Ct. at 1688, 1688 n. 4.

8. See *Owen v. City of Independence*, 445 U.S. 622, 644 n. 26, 648 and 648 n. 31, 100 S.Ct. 1398, 1412 n. 26, 1414 and 1414 n. 31, 63 L.Ed.2d 673. The common law ministerial-discretionary distinction originally developed "[i]n order to prevent direct interference by courts with action by co-ordinate branches of the government." 2 F. HARPER & F. JAMES, JR., THE LAW OF TORTS § 29.10, 1638 (1956). The doctrine provided that "injunction or prerogative writ will not issue to compel or forbid a public officer to do an act which by constitution or statute is *discretionary*, or to act in any certain way when the law gives him discretion as to the means. If on the other hand, the law gives commands or forbids the officer to do that act, then his function with regard to it is *ministerial* and his duty will be enforced by appropriate court process." *Id.* It was not until the twentieth century that a "very different rule" couched in the same terms developed to limit tort liability of public officials where official action or inaction "involves the exercise of *discretion*, and is not merely *ministerial* * * *." *Id.* at § 29.10, 1638, 1639 n. 7 (emphasis in original).

In *Owen*, the Court rejected the plaintiff's attempt to base an immunity for municipalities from Section 1983 liability on the ministerial-discretionary distinction, noting that the doctrine was grounded on a "concern for separation of powers" and not upon the principle of sovereign immunity. The Court also observed in a footnote the difficulty courts have experienced in attempting to discern a clear line between "discretionary" and "ministerial" functions (*Owen*, 445 U.S. at 648, 100 S.Ct. at 1414) and appeared to question the viability of determining immunities on the basis of muddled and unsound distinctions. *Id.* at 644 n. 26, 648 n. 31, 100 S.Ct. at 1412 n. 26, 1414 n. 31.

*Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895; *Harlow,* 457 U.S. at 807, 102 S.Ct. at 2732, and the need to avoid unfairly subjecting the official to liability for the good faith exercise of discretion pursuant to a legal obligation. *Scheuer,* 416 U.S. at 240, 94 S.Ct. at 1688. The use of a ministerial-discretionary distinction by courts would provide these officials with little or no guidance as to the protection afforded them.[9]

It does seem reasonable, however, to require that a lower level public official such as a sheriff demonstrate that, based on objective circumstances at the time he acted, his actions were undertaken pursuant to the performance of his duties and within the scope of his authority. See *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir. 1981). We hold that defendant Frantz made an adequate showing to the district court under the above standard. Here the Sheriff was under a duty to take the accused plaintiff before a judge of the Wells Circuit Court. The duty arose either from the then statutorily prescribed arrest warrant form or from the Indiana statute then in effect seemingly requiring a first appearance (I.C. § 35–1–8–1(a), *supra,* n. 2) or both. That statute implicitly placed some duty on the officers of the Wells Circuit Court to cooperate with the arresting officer in bringing about a first appearance; yet it makes no attempt to allocate responsibility among the concerned parties. Further, the statute contained no time limit nor specific procedures for the Sheriff to follow in accomplishing the task. The warrant form itself, while requiring the presentation of the accused "instanter," did not instruct the Sheriff as to the proper mode of meeting his obligation. The district court concluded, and the defendant continues to argue, that the Sheriff's duty was fulfilled in accordance with custom by promptly returning the arrest warrant to the clerk of court, thus notifying the court of the plaintiff's status, and by repeatedly calling the prosecutor's office to arrange a time for the plaintiff's court appearance pursuant to the Wells Circuit Court's own procedure.[10] While it would have been preferable for the Sheriff to have done even more to fulfill his duty under I.C. § 35–1–8–1(a), it cannot be said that there was an adequately defined duty upon him to undertake formally the futile act (*supra* n. 10) of attempting to present Coleman to the Wells Circuit Court. His conduct, based on objective circumstances, was reasonably undertaken pursuant to the performance of his duties and within the scope of his authority.[11] To subject him to liability in this

---

**9.** The Fourth Circuit also ruled that the distinction between discretionary and ministerial action is irrelevant to the determination of whether a public official enjoys a qualified immunity from § 1983 liability. See *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir.1980), certiorari denied, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59. For a description of the multitude of factors considered in making the distinction, see Restatement (Second) Of Torts § 895 D (1979).

The practical problems caused by basing an immunity on a formalistic distinction have become apparent with regard to the treatment of public prosecutor immunity. Public prosecutors are granted a qualified immunity when performing administrative or investigatory duties, but an absolute immunity when performing a quasi-judicial role. See *Imbler v. Pachtman,* 424 U.S. at 424–427, 96 S.Ct. at 992–993; *Halperin v. Kissinger,* 606 F.2d 1192, 1208 (D.C.Cir.1979), affirmed in part, certiorari dismissed in part, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367, rehearing denied, 453 U.S. 928, 102 S.Ct. 892, 69 L.Ed.2d 1024. The consequence of this split immunity is that prosecutors are left unsure as to what degree of protection they have when performing a duty. See Note, *Supplementing the Functional Test of Prosecutorial Immunity,* 34 Stan.L.Rev. 487 (1982); Comment, *Constitutional Law—Prosecutorial Immunity,* 12 Ga.L.Rev. 372, 378–379 (1978).

**10.** Uncontested testimony indicated that the Wells Circuit Court would not schedule a court date without some action on the part of the prosecutor and that the court would refuse to see a detainee until a court date was scheduled (Nyal Frantz Deposition pp. 14, 16). The district court noted that the Sheriff had no capacity or legal obligation to schedule court dates or to force the prosecutor's office to schedule them (593 F.Supp. at 34).

**11.** Although the district court did not expressly rule that the defendant was entitled to a qualified immunity under the objective circumstances standard, there is no need to remand to the district court because in our view defendant has prevailed on this issue as a matter of law.

instance on the basis of his interpretation of an unclear duty under statute and warrant, where his interpretation was consistent with the Wells Circuit Court's own procedures, would penalize him for an error in judgment, contrary to the recognized purpose of the qualified immunity for public officials.[12]

■ Defendant sheriff's alleged violation of Indiana law does not bar his ability to claim a qualified immunity under *Davis v. Scherer*, —— U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139. While *Davis* holds that as a general rule an official's violation of a clear statute or regulation does not deprive the official of qualified immunity from damages for violation of other statutory or constitutional provisions (—— U.S. at ——, 104 S.Ct. at 3019), the Court left open the possibility that a federal or state official could "lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—[if] that statute or regulation provides the basis for the cause of action sued upon." —— U.S. at —— n. 12, 104 S.Ct. at 3020 n. 12. As in

*Davis*, plaintiff here makes no claim that the alleged violation of state law is itself actionable under § 1983 or bears upon the claim of constitutional right that plaintiff asserts under § 1983. —— U.S. at ——, 104 S.Ct. at 3019. *Davis* recognized that in certain circumstances violations of statutes and regulations, apart from a violation of the Constitution, themselves form a basis for a § 1983 claim (see —— U.S. at —— n. 12, 104 S.Ct. at 3020 n. 12 (citing *Harlow*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396; *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d, 555), and that the qualified immunity is unavailable to defendants where the statutory right in such cases is clearly established. Here plaintiff's § 1983 claim rests solely on alleged violations of the Constitution (¶¶ 3, 13 of complaint). Further, *Davis* does not indicate that the unavailability of the qualified immunity with respect to a § 1983 claim based on violation of statute could bar the same defendant from asserting the immunity against à claim based on the Constitution. —— U.S. at —— n. 12, 104 S.Ct. 3020 n. 12.

**12.** As the Fifth Circuit pointed out in *Barker v. Norman, supra,* circumstances can exist where "an official's actions may be so far removed from the ordinary course of his duties, so outside even his discretionary authority to act, that the official cannot establish entitlement to a claim of immunity even in the first instance; yet there may be a sufficient nexus between the official's position and the complained of conduct to satisfy Section 1983's 'under color of law' requirement." *Barker,* 651 F.2d at 1121 n. 18. In that situation the official is afforded no immunity from Section 1983 liability. *Barker* offers as an example the case of *Harper v. Merckle,* 638 F.2d 848 (5th Cir.1981), certiorari denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85, where a state judge initiated a summary hearing on his own volition and served as complaining witness, prosecutor, fact-finder and judge in determining that the plaintiff was in "contempt" of court. *Harper* held that the judge's actions were neither "judicial acts" nor acts taken in the judge's official capacity. Since there was no question, however, that the judge's actions were undertaken under color of state law, the judge could be subject to Section 1983 liability without the benefit of any immunity. *Harper,* 638 F.2d at 858–859; *Barker,* 651 F.2d at 1121 n. 18.

In the present case, had the Indiana statute spelled out the Sheriff's duties more clearly, *i.e.,* requiring him to contact the clerk of the court

within 24 hours of arrest to arrange for a first appearance, his failure to fulfill those duties would not be protected by the qualified public official immunity. There objective circumstances would indicate that the Sheriff's actions were not undertaken pursuant to the performance of his duties and were not within the scope of his authority.

The objective circumstances test allows an official to assert qualified immunity where he reasonably attempts to fulfill his obligation under a statute which commands him to act but which does not specify with particularity how, when, or where the obligation is to be carried out. In this sense, qualified immunity is limited to instances where the official's duties may be characterized as "discretionary," consistent with the language of *Scheuer, Harlow,* and *Butz* which limits the application of the immunity to situations where officials "are required to exercise their discretion," 457 U.S. at 807, 102 S.Ct. at 2732; or act "within the range of discretion permitted the holders of such office under [state] law." 416 U.S. at 250, 94 S.Ct. at 1693. Thus, conditioning the availability of a qualified immunity for public officials on an "objective circumstances" standard accommodates the concept of required "discretion" without reliance upon the antiquated and confusing ministerial-discretionary distinction.

■ Finally, this loss of immunity with regard to statutorily based § 1983 claims is limited to instances where a clear command of a statute or regulation has been violated. Nahmod, *supra* p. 5, at 252 n. 168. As discussed above, *supra* p. 16, the Indiana statutes as of the time of the challenged conduct did not present such a clear command to the Sheriff.

## IV

■ Under the standard set forth in *Harlow v. Fitzgerald, supra,* defendant Frantz is shielded from Section 1983 liability for damages so long as his conduct did not violate a clearly established constitutional right of which a reasonable person would have known at the time the challenged conduct took place. Plaintiff's claim that his 18-day detention violates a "nationally recognized" constitutional right is untenable.[13] This Court has been unable to discover one case that expressly holds that a constitutional violation is caused by a failure to afford the accused an "initial appearance" after arrest pursuant to a valid warrant.[14] The only courts expressly considering plaintiff's type of argument

have rejected it. See *Perry v. Jones, supra; Anderson v. Nosser, supra.*

Most of the authority cited by plaintiff as supporting his proposition considers the constitutionality of prolonged pre-trial detentions under the Fourth and Fourteenth Amendments where there allegedly has been no valid determination of probable cause by a judicial officer. See *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54; *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1133 (4th Cir.1982); *Patzig v. O'Neal,* 577 F.2d 841 (3d Cir.1978); *Daly v. Pedersen,* 278 F.Supp. 88 (D.Minn.1967). *Gerstein* holds that a judicial determination of probable cause is a "prerequisite to extended restraint of liberty." 420 U.S. at 114, 95 S.Ct. at 863. The right to a valid determination of probable cause by a judicial officer, however, is not at issue here because that right was respected by the Wells County Court (593 F.Supp. at 32).

While *Baker, supra,* is certainly relevant to this issue, the case lacks specific discussion of a right to a first appearance and therefore does not "clearly establish" such a right.[15] *Anderson v. Nosser, supra,* on

---

**13.** As we noted in *Crowder v. Lash,* 687 F.2d 996, 1002–1003 (1982), neither the Supreme Court nor this Court has settled the issue of whether in a Section 1983 action the plaintiff must prove, or whether in the alternative the defendant must disprove, that the constitutional right in question was clearly established at the time of the challenged conduct. It is clear from the record, however, that this defendant accepted and successfully met this burden. Therefore, we agree with the district court's conclusion that there is no genuine issue regarding the claim (rejected below and by us) that the plaintiff's right was clearly established as a matter of constitutional law. Hence the defendant properly pled the affirmative defense of qualified immunity. See *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572.

**14.** Defendant's affidavit for the bench warrant showed that plaintiff tried to sell a shotgun stolen from Robert Cole a week previously to informant Mrs. Arnold Watson and the affidavit requested a $20,000 bond (later reduced to $10,-000 by the Wells County Circuit Court). Plaintiff's Exhibit 2. Without deciding whether the plaintiff properly raised the issue below, the affidavit causes us to concur with the district court's conclusion that the bench warrant in

this case was supported by probable cause as found by the local court under the relevant standards. See *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527; *Franks v. Delaware,* 438 U.S. 154, 158, 98 S.Ct. 2674, 2677, 57 L.Ed.2d 667; *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509; 12 L.Ed.2d 723.

**15.** The dissent asserts that plaintiff possessed a clearly established constitutional right based solely on the language of *Baker, supra* (Dissent, p. 733). We cannot view the cited language of *Baker* as accomplishing this feat. In the instances where the Supreme Court and this Court have attempted to ascertain whether a constitutional right is a "clearly established" one, the analysis utilized has required caselaw which clearly and consistently recognized the constitutional right rather than the type of relevant but academic discussion relied upon by the dissent. See *Davis v. Scherer,* — U.S. ——, 104 S.Ct. at 3018–3019 (Justice Powell for the majority), 104 S.Ct. at 3023–3026 (Justice Brennan dissenting); *Egger v. Phillips,* 710 F.2d 292, 314–315 (7th Cir.1983); *Chavis v. Rowe,* 643 F.2d 1281, 1288 (7th Cir.1981); *Hayes v. Thompson,* 637 F.2d

which plaintiff largely depends, held that a Police Chief's failure to take plaintiffs before a magistrate before incarcerating them was only a violation of Mississippi laws so that their federal allegations fell. Instead of supporting plaintiff, *Anderson* consequently supports defendant on the only count before us.

In summary, as a matter of law, we hold that plaintiff's constitutional right to a "first appearance" before a judicial officer following arrest pursuant to a valid warrant based on a determination of probable cause, setting of bond and notification of charges was not "clearly established" within the meaning the Supreme Court has given that term. See *e.g., Procunier v. Navarette*, 434 U.S. 555, 562–564, 98 S.Ct. 855, 859–861, 55 L.Ed.2d 24. In addition, defendant did what he could to secure an early first appearance for plaintiff. He was therefore shielded from Section 1983 liability through his qualified immunity.

The district court's order granting defendant's motion for summary judgment is affirmed.

CUDAHY, Circuit Judge, concurring.

I agree that Sheriff Frantz was, on the particular facts of this case, shielded by qualified immunity. The duty in question is the duty either to take the prisoner before a magistrate or to release him.

I disagree with the majority opinion in that I think that there was a clear duty— reasonably known to the Sheriff—to take Coleman promptly before the court. The only problem with this theory of liability is that the Sheriff apparently did all he could to fulfill this duty, but, without the support of a prosecutor and the acquiescence of a judicial officer, there was nothing he could do.

A much more plausible theory may be based on Frantz's alternative duty to release the prisoner if he could not be brought before a judicial officer. Here, I disagree with the dissent: there was at the

time no sufficiently clear and established duty, known to Frantz, to release the prisoner within 18 days if it was impossible to present him to a judge or magistrate. In light of the court's decision today, of course, there should no longer be any doubt about this aspect of the duty.

MYRON L. GORDON, Senior District Judge, dissenting.

I agree with the majority's conclusion that a constitutional violation occurs when a presumptively innocent person is incarcerated by the sheriff for 18 days without being taken before a judicial officer for an initial appearance. I cannot accept, however, the majority's holding that the sheriff cannot be civilly liable for such a serious constitutional violation. Therefore, I respectfully dissent.

In order to hold a state officer liable under 42 U.S.C. § 1983, he must in some manner have caused the alleged deprivation of rights. *Dommer v. Crawford*, 653 F.2d 289, 291 (7th Cir.1981). The test for causation under § 1983 was set out by this court in *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982):

"An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent."

The majority suggests, although it does not base its holding on this ground, that it was the prosecutor rather than the sheriff who caused the constitutional violation in this case. I disagree. In *Dommer, supra,* 653 F.2d at 291, the court recognized that the city police and not the prosecutor have sole custody of arrestees and alone have the responsibility under Indiana law to bring arrestees before the court. *Id.*

---

483, 490–493 (7th Cir.1980); *Chapman v. Pickett,* 586 F.2d 22, 25–26, 28–29 (7th Cir.1978); *Little v. Walker,* 552 F.2d 193, 196–197 (7th

Cir.1977); *Knell v. Bensinger,* 522 F.2d 720, 725–726 (7th Cir.1975); Nahmod, *supra* p. 722, at 251, 252, 252 n. 168.

In the present case, similarly, I believe that it was Sheriff Frantz and not the prosecutor who was personally responsible for Mr. Coleman's prolonged detention. The prosecutor had no authority under Indiana law to direct the sheriff to detain an individual for a prolonged time period without being taken before a judicial officer. The Indiana law applicable to the sheriff at the time of Mr. Coleman's arrest did provide, however, that the arresting officer take the accused before the court. Ind. Code §§ 35–1–8–1(a), 35–1–17–4 (Burns 1979) (repealed 1982).

It was the sheriff and not the prosecutor who held the keys to the jail cell; it was the sheriff who had sole custody of Mr. Coleman. That the prosecutor's inaction may have also contributed to Mr. Coleman's prolonged detention does not negate the sheriff's personal responsibility for the detention. The sheriff must be held accountable for either securing a court appearance for the arrestee or, at some reasonable point, releasing him.

By holding the sheriff personally responsible for the prolonged detention of Mr. Coleman, it does not necessarily follow that any damage award would come out of the sheriff's own pocket. Under Indiana law, a governmental entity may pay any judgment against a public official arising out of a federal civil rights violation by the official committed within the scope of his employment. Ind.Code § 34–4–16.7–1 (Burns Supp.1984). The governmental entity must also pay all costs and fees incurred by the public employee in defense of the suit. *Id.* When the sheriff acts within the scope of his employment, as in this case, it seems likely that any damages against him would be paid by the county rather than by the sheriff personally.

The majority holds that the sheriff is protected from liability under the doctrine of qualified immunity. The test for qualified immunity was enunciated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982), wherein the Court rejected inquiring into a public official's state of mind in favor of a completely objective standard. Under *Harlow*,

"... officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Id.* at 818, 102 S.Ct. at 2738. The test thus focuses on the "objective legal reasonableness" of the official's conduct. *Id.* at 819, 102 S.Ct. at 2739.

The recognition of a qualified immunity defense reflects an attempt to balance the importance of a damage remedy to protect citizens' rights and to deter unconstitutional conduct against the need to allow public officials a margin of error when exercising their discretion "and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 504–06, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978); *see also Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The broader the range of an official's responsibilities and duties, the broader the range of discretion provided by the doctrine of qualified immunity. *Scheuer v. Rhodes*, 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1973). While his functions regarding this plaintiff were more than ministerial, the sheriff did not act as an executive endowed with broad discretion in exercising those responsibilities. He is, therefore, not entitled to as comprehensive a range of discretion under the qualified immunity doctrine as high executive officials.

Applying the test for qualified immunity, the majority concludes that the sheriff did not violate a clearly established constitutional right; in my view that finding is untenable. The majority observes that the sheriff's actions were taken in accord with unofficial custom in the county and that the sheriff's interpretation of the language of the warrant and Indiana statutes was reasonable. Under *Harlow*, the validity of the sheriff's qualified immunity defense depends on whether his conduct violated a

constitutional right which was clearly established at the time of the alleged constitutional violation. If so, the sheriff is not entitled to the shield of qualified immunity irrespective of his subjective belief that he was acting properly. *See McKinley v. Trattles*, 732 F.2d 1320, 1324 (7th Cir.1984). The heart of the qualified immunity test is whether a reasonable person would have known that the challenged conduct violated a constitutional right recognized at the time of the alleged violation. *Davis v. Scherer*, —— U.S. ——, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139.

I believe that the reasonable reading of *Baker, supra*, decided two years prior to Mr. Coleman's incarceration, leads to the inescapable conclusion that the sheriff violated Mr. Coleman's clear constitutional right either to be brought before a judicial officer for a first appearance within a reasonably prompt period of time following arrest and confinement or to be released from confinement if such an appearance could not be arranged. It is clear to me that Mr. Coleman's 18 day detention squarely qualifies under the Supreme Court's determination that "after the lapse of a certain amount of time" an arrestee will be deemed to have been deprived of liberty without due process of law. *Baker, supra*, 443 U.S. at 145, 99 S.Ct. at 2695. Jailing a presumably innocent person without affording him an initial hearing for a period of 18 days in the face of his repeated protests of innocence offends the *Baker* condemnation of an "indefinite" detention.

I cannot subscribe to the implication of the majority opinion that a law enforcement officer could have reasonably believed that holding a person in jail for 18 days without bringing him before a judicial officer for an initial appearance is constitutionally acceptable. The lengthy incarceration of Mr. Coleman, as the majority observes, is completely inconsistent with notions of "fundamental fairness" and "ordered liberty." The outrageousness of the sheriff's conduct in this case is exemplified by the fact that, according to the sheriff himself, administrative processing of arres-

tees normally takes less than one half hour. In addition, the Wells County jail is just over one block from the courthouse, hardly an 18 day trip. Requiring the sheriff to recognize Mr. Coleman's due process rights under the circumstances of this case "imposes neither an unfair burden upon a person assuming a responsible office ... nor an unwarranted burden in light of the value which civil rights have in our legal system." *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

The Supreme Court recently held that officials sued under § 1983 do not lose their qualified immunity solely because their conduct violates some federal or state statute or regulation unless the statute or regulation provides the basis for the cause of action sued upon. *Davis, supra*, 104 S.Ct. at 3020. Thus, the sheriff is not foreclosed from attempting to assert a qualified immunity defense because of the provisions of Indiana law. However, the requirements of the warrant and the Indiana statutes are obviously designed in part to safeguard an arrested person's due process rights; accordingly, the sheriff should have been alerted to the fact that he was depriving Mr. Coleman of his protected rights. *Davis, supra*, 104 S.Ct. at 3025 n. 2 (Brennan, J., concurring in part, dissenting in part).

The language of the warrant, substantially following the forms set forth in Ind. Code § 35–1–17–4 (repealed in 1982 and replaced by Ind.Code § 35–33–2–2), required that *the sheriff* "have [Mr. Coleman's] body before the Judge of the Wells Circuit Court, instanter, then and there to answer the State of Indiana, on a charge of Receiving Stolen Property...." The warrant directed the sheriff, not the prosecutor or the court, to bring the defendant in person before the court, not merely to call the court or the prosecutor to attempt to arrange a court date. Returning the warrant and filing it with the clerk of court as well as calling the prosecutor to inquire about a court date for an arrestee are separate acts from actually taking the ar-

restee before a judicial officer and do not substitute for the latter.

The direction that the defendant be taken before the court "instanter" (the new form of warrant statute, Ind.Code § 35–33–2–2 (1982), uses the language "without unnecessary delay") may afford the sheriff some limited discretion, but by no reasonable interpretation can it mean 18 days.

Moreover, Ind.Code § 35–1–8–1(a) (Burns 1979) (repealed 1982), required that "when an officer arrests an accused, he shall take the accused before the court issuing the warrant." The language of this statute buttresses the conclusion that the sheriff had the ultimate responsibility in July 1981 for assuring that the defendant was brought before the court reasonably promptly. This statute was replaced by Ind.Code § 35–33–7–4 (1982), which was actually enacted prior to the detention of Mr. Coleman but did not take effect until 1982. Act of May 5, 1981, P.L. No. 298 § 2, 1981 Ind.Acts 2314, 2317. Section 35–33–7–4 requires that a person arrested pursuant to a valid warrant "be taken *promptly* for an initial hearing before the court." (emphasis added). *Cf.* Ind.Code § 18–1–11–8 (Burns 1979) (repealed 1982) (required city police officers to bring arrested person before a court within 24 hours of arrest, or 48 hours if a Sunday intervened.) Read together, the language of the bench warrant and the relevant Indiana statutes only serves to reinforce the conclusion that the sheriff's detention of Mr. Coleman for 18 days without bringing him before the court deprived the plaintiff of his clearly established constitutional right to due process.

Thus, because Sheriff Frantz violated Mr. Coleman's right to due process through an initial judicial hearing, a right clearly established at the time of the violation, I would hold that the district court erred in granting summary judgment in favor of the sheriff. This conclusion, however, does not automatically establish the sheriff's liability. The Supreme Court in *Harlow, supra,* 457 U.S. at 819, 102 S.Ct. at 2739, recognized that even if the law is settled, a public official may still be entitled to qualified immunity if he can demonstrate that "extraordinary circumstances" existed under which he can prove "that he neither knew nor should have known of the relevant legal standard." This issue was not addressed by the court below. If on remand the sheriff can successfully show the existence of such circumstances, he may still be entitled to immunity.

The district court, in granting summary judgment for the defendant on the § 1983 count, also dismissed the plaintiff's pendent state claims arising out of the sheriff's detention of Mr. Coleman. Having concluded that the district court erred in its disposition of the § 1983 count, I would direct the district court, on remand, to reconsider its dismissal of the pendent state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

For the foregoing reasons, I would reverse the district court's grant of summary judgment for the defendant and remand the case for further proceedings.