**Carlton JACKSON, Plaintiff,**

v.

**John Q. HAMM, etc.; et al., Defendants.**

**No. CIV.A. 98–T–1437–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 27, 1999.

Maurica A. Rykard–Johnson, Larry C. Tew, David Lee Ward, defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiff Carlton Jackson names as defendants the former Sheriff of Barbour County, Alabama, and a number of his deputies, and claims that they violated his civil rights in two ways: first, they violated the fourth and fourteenth amendments to the United States Constitution by detaining him for 28 days without the benefit of an appearance bond or an initial appearance before a magistrate or judge; and, second, they violated the fourteenth amendment by turning over his car keys to his girlfriend after his arrest. Jackson seeks enforcement of these constitutional amendments pursuant to 42 U.S.C.A. § 1983. He sues the defendants in their individual capacities only. Jurisdiction is proper under 28 U.S.C.A. §§ 1331 (federal question) and 1343(a)(4) (civil rights).

This lawsuit is before the court on motions filed by the defendants seeking summary judgment on their qualified-immunity defenses. The motions will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, the court will view all evidence and any factual inferences in the light most favorable to the nonmoving party. *See* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

Viewed in the light most favorable to Jackson, the facts are as follows.

Banks Thomas Smith, M. Adam Jones, Hall & Smith, Dothan, AL, for Carlton Jackson, plaintiff.

C. Winston Sheehan, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for Barbour County Commission, John Q. Hamm, individually, Scott Drivas, individually, Leroy Upshaw, individually, James E. Brafort, Samuel L. Denson, Sr., Arlene Hoskey Griglen, Ruth Williams Haynes, Callie M. Heath, Melissa Ann Hunter, Lonnie Kelly, Michael Lawrence, Karen L. Menear, George Parham, Evelyn Person, Sherry E. Peters, Derrick E. Rodgers,

• In late June 1998, Jackson purchased a vehicle and placed its title in the name of his and LaWanza Johnson's then ten-month old daughter. Although Jackson and Johnson are not married, they lived together and on occasion referred to each other as husband and wife.

• On July 6, 1998, Johnson filed an incident report with Barbour County Deputy Sheriff Leroy Upshaw charging that Jackson assaulted her and stole her vehicle, which is the same vehicle that Jackson purchased in late June.

• On July 7, warrants were issued for Jackson's arrest based on the assault and theft charges. The warrants stated that Jackson should be arrested and detained until either August 6 or when he was legally discharged.[1]

• On July 9, Jackson went to the Barbour County Sheriff's Office to declare his innocence. Deputy Sheriff Scott Drivas arrested Jackson and took him to the Barbour County Jail for booking. Deputy Sheriff Upshaw gave Jackson's car keys to Johnson.

• Rule 4.3 of the Alabama Rules of Criminal Procedure requires that a person arrested pursuant to a warrant who "cannot meet the conditions of release provided on the warrant" or for whom "no such conditions are prescribed or provided for" in the warrant must "be taken without undue delay, except in no event later than seventy-two (72) hours after arrest, before a judge or magistrate" for an initial appearance.

At this initial appearance, according to Rule 4.4 of the Alabama Rules of Criminal Procedure, the magistrate or judge must, among other things, "[a]scertain the defendant's true name and address ...; ... [i]nform the defendant of the charges against him; ... [i]nform the defendant of the right to be represented by counsel, advise the defendant that he will be afforded time and opportunity to retain counsel, advise the defendant that if he is indigent

and unable to obtain counsel, counsel will be appointed to represent him, and, inform the defendant of the right to remain silent; and ... [d]etermine conditions of release...."

Rule 4.3 then details what should happen in the event of a failure to comply with it and Rule 4.4. Rule 4.3 provides that, "If the person arrested cannot meet the conditions of release and has not been taken before a judge or magistrate in the case of a warrant issued on a complaint, ... without undue delay, except ... in no event later than seventy-two (72) hours after arrest, ... such person shall be released upon execution of an appearance bond in the minimum amount required...."

• Despite Rule 4.3's requirement of an initial appearance within 72 hours or release on a bond in the minimum amount, Jackson remained in jail for 28 days without either. During this period, he specifically asked Deputy Sheriffs Michael Lawrence, Callie E. Heath, and James E. Bradfort when he would have the opportunity to see a judge and have a bond executed on his behalf. Their supervisor, Deputy Sheriff George Parham, responded and told Jackson on three or more occasions that he could not see a judge until August 6.

• On August 6, Jackson finally appeared before a judge and was released upon his own recognizance.

• On December 22, 1998, Jackson filed this lawsuit, naming the following as defendants in their individual capacities: Sheriff John Q. Hamm and Deputy Sheriffs George Parham, Scott Drivas, Leroy Upshaw, Annie D. Banks, James E. Bradfort, Samuel L. Denson Sr., Arlene Hoskey Griglen, Callie M. Heath, Melissa Ann Hunter, Lonnie Kelly, Michael Lawrence, Karen L. Menear, Evelyn Person, Sherry E. Peters, Derrick E. Rodgers, Maurica A. Rykard–Johnson, and Larry C. Tew.

---

1. The record before this court contains a copy of only one warrant—the one for the assault charge. However, because in their briefs and other evidence the parties refer to two warrants, the court has assumed that two warrants were actually issued.

As stated, relying on § 1983, Jackson claims that the defendants violated the fourth and fourteenth amendments by detaining him for 28 days without the benefit of an appearance bond or an initial appearance before a magistrate or judge, and they violated the fourteenth amendment by turning over his car keys to his girlfriend after his arrest.

## III. DISCUSSION

In their motions for summary judgment, the defendants argue that they are protected by qualified immunity from Jackson's federal claims.

■ The doctrine of qualified immunity insulates government agents from personal liability for money damages stemming from actions taken pursuant to their discretionary authority. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The test for qualified immunity turns primarily on the objective reasonableness of the officials' conduct in light of established law: "governmental officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Where the law that the defendants allegedly violated was not clearly established at the time of the alleged offense, the defendants are entitled to qualified immunity. *See id.* at 807, 102 S.Ct. at 2732. If the law was clearly established, however, the immunity defense will fail because "a reasonably competent public official should know the law governing his conduct." *Id.* at 818, 102 S.Ct. at 2738.

■ In determining whether a public official is entitled to qualified immunity a two-step analysis is followed. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). First, the defendant must prove that he was acting within the scope of his 'discretionary authority' at the

time of the allegedly illegal conduct. *See id.* Once this is proven, the burden shifts to the plaintiff to prove that the defendant's actions violated clearly established statutory or constitutional law. *See id.*

■ To show that actions were within the scope of discretionary authority, the defendant "must demonstrate objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. July 30, 1981).[2] The parties do not dispute that the defendants were acting pursuant to their discretionary authority, and a reasonable interpretation of the record reveals that they were doing so.

With respect to the second step of the qualified immunity analysis, the Supreme Court recently indicated that "[a] court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999)). "Deciding the constitutional question before addressing the qualified immunity question promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.*

■ If the court determines that the plaintiff has not alleged a deprivation of a constitutional right, then the inquiry is over, for it would follow perforce that such right was not clearly established. *See County of Sacramento v. Lewis*, 523 U.S. 833, —— n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). However, if the court determines that the plaintiff has, in

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to "whether that right allegedly implicated was clearly established at the time of the events in question." *Id.*

Therefore, the court will determine first whether a constitutional right was violated before considering, if necessary, whether that right was clearly established.

A. Detention without an Initial Appearance Hearing or a Minimum–Amount Appearance Bond

■ Jackson claims that his 28–day detention without an initial appearance or a minimum-amount appearance bond violated the fourth and the fourteenth amendments as enforced through § 1983. Section 1983 permits an individual to obtain legal redress for a violation of a constitutional right by a state actor. It is not, by itself, a source of substantive federal rights. It "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). To sustain a claim under § 1983, a plaintiff must allege facts showing that the "conduct complained of was committed by a person;" that the person was "acting under color of state law;" and that "this conduct deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). As to all of Jackson's claims, the parties do not dispute the first two requirements—the defendants are persons who acted under the color of state law. The dispute centers on whether Jackson was deprived of a constitutional right.

The court will consider Jackson's fourth-amendment claim first.

### 1. Fourth Amendment

■ Relying on § 1983, Jackson maintains that his detention without an initial appearance or a minimum-amount appearance bond violated the fourth amendment. The fourth amendment provides, in part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The fourth amendment therefore "requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker,* 443 U.S. at 142, 99 S.Ct. at 2694. But "since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143, 99 S.Ct. at 2694. Therefore, because Jackson's arrest was pursuant to a valid warrant (Jackson has not challenged the validity of the arrest warrant itself) issued after a probable-cause determination by a judicial officer, he was not entitled under the fourth amendment to a separate probable-cause hearing after his arrest. *Id.* His fourth-amendment claim has no merit.

### 2. Fourteenth Amendment

Next, relying on § 1983, Jackson contends that his rights under the due process clause of the fourteenth amendment were violated. The due process clause provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The clause "provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994) (en banc), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). "A violation of either of these kinds of protection may form the basis for a suit." *Id.* It appears from Jackson's allegations that he avers substantive and procedural due-process violations. The court will address these theories in turn.

### a. Substantive Due Process

■ The Supreme Court recently reiterated that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Lewis,* 523 U.S. at ——, 118 S.Ct. at 1716. Substantive-due-process violations are so clearly devoid of any legitimate governmental purpose that they would offend the Constitution regardless of procedural protections. *See id.* at ——, 118 S.Ct. at 1713. The precise standard to be employed in determining whether an act of government is fatally arbitrary in the substantive-due-process context depends upon whether the challenged act occurred within the legislative or executive spheres. *Id.* Where, as here, executive action is at issue, "the cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* at ——, 118 S.Ct. at 1717.

■ Jackson initially rests his substantive-due-process claim on his unlawful confinement without securing the benefits provided by Rules 4.3 and 4.4 of the Alabama Rules of Criminal Procedure, which, as stated, required that Jackson be brought before a judge or magistrate within 72 hours for an initial appearance or released on a minimum bond. But the violation of a state law by a governmental actor does not necessarily convert subsequent resulting harm into a due-process violation. In *McKinney v. Pate,* the Eleventh Circuit explained: "areas in which substantive rights are created only by state law ... are not subject to substantive-due-process protection under the Due Process Clause because 'substantive-due-process rights are created only by the Constitution.'" 20 F.3d at 1556 (quoting *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). Unless the governmental actor's violation of a state statute corresponds with the infringement of a right derived from the United States Constitution, the plaintiff cannot establish a substantive-due-process claim. The violation of Rules 4.3 and 4.4 does not, by itself, make out a substantive-due-process claim. The court must therefore look to whether the right otherwise exists within the concept of substantive due process.

The Seventh Circuit Court of Appeals has ruled that extended pre-trial confinement upon arrest with a warrant but without the benefit of an initial appearance constitutes a violation of the Constitution. In 1985, in *Coleman v. Frantz,* 754 F.2d 719, the appellate court held that an 18–day detention on a valid arrest warrant without an initial appearance constituted a violation of substantive-due-process rights. The *Coleman* court first turned to two Supreme Court cases, which, though addressing fourth-amendment rather than substantive-due-process challenges to prolonged detention, detailed the high stakes of such detention. The *Coleman* court noted that, in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), in sustaining a challenge to an extended detention following an arrest without a prior judicial determination of probable cause, the Supreme Court wrote: "The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." 420 U.S. at 114, 95 S.Ct. at 863. The *Coleman* court then looked to *Baker v. McCollan,* in which the Supreme Court, in rejecting a challenge to a three-day detention following a mistaken arrest pursuant to a valid criminal warrant, wrote: "Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." 443 U.S. at 144, 99 S.Ct. at 2694.

Having drawn from the Supreme Court cases an articulation of the strong liberty interests at issue in prolonged confinement, the *Coleman* court turned its attention to whether these interests implicated substantive-due-process rights. The court

emphasized that an initial appearance serves much more than an opportunity for a fourth-amendment determination of whether there is probable cause for continued detention. The initial appearance provides the first opportunity for vindication of a number of constitutional rights, including those under the fifth, sixth, and eighth amendments to the United States Constitution. It marks the formal beginning of the criminal prosecution at which a judge or magistrate makes sure that the arrestee is the person named in the complaint, knows the charges contained in the complaint, and knows of his right to employ counsel of his choice and of his right to appointed counsel if he is indigent; the court also sets bail.

Building on this "listing of traditional components of a first appearance," 745 F.2d at 724, the *Coleman* court then explained how each component allows for the vindication of the important constitutional rights that attend the criminal process:

> "Almost every element of a 'first appearance' under state statutes or the Federal Rules of Criminal Procedure serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent ... (1) inform the suspect of the charge— Sixth Amendment ('the accused shall enjoy the right * * * to be informed of the nature and the cause of the accusation'); (2) inform the defendant of the right to counsel and determine if the defendant is indigent and desires the assistance of appointed counsel—Sixth Amendment ("the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense"); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387; (3) inform the suspect of the right to remain silent under the privilege against self-incrimination — Fifth Amendment ('No person * * * shall be compelled in

any criminal case to be a witness against himself'); *Miranda v. Arizona*, supra; (4) set or review bail—Eighth Amendment ('Excessive bail shall not be required'), *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3."

754 F.2d at 724 (parallel citations omitted).

Later, in 1998, the Seventh Circuit reaffirmed *Coleman* and held in *Armstrong v. Squadrito*, 152 F.3d 564, that the substantive-due-process right of a detainee was violated when he was held on a body attachment warrant for 57 days without receiving an initial appearance before a magistrate or judge. The *Armstrong* court wrote: "Because many of these rights involve the delivery of information—information that allows an arrestee to take appropriate legal action—a first appearance amounts to the established procedure that ensures an arrestee receives this information from a neutral source." 152 F.3d at 573. The court then continued: "[A]n extended detention without a first appearance 'substantially impinges upon and threatens all of these rights.' While the *Coleman* court recognized that the absence of a first appearance may not necessarily cause 'a specific violation of any one of these rights,' the court found that the 'ultimate effect of the omission ... must be deemed a denial of due process.' [754 F.2d at 722.] The first appearance has such great value in protecting numerous rights that its denial presumptively disrupts those rights. Therefore, as a matter of constitutional prophylaxis, the denial of a first appearance offends the Due Process Clause." 152 F.3d at 573; *see also, Patton v. Przybylski*, 822 F.2d 697, 700–01 (7th Cir.1987).

Moreover, the committee comments that attend Rule 4.4 of the Alabama Rules of Criminal Procedure, which sets out what should occur at an initial appearance, confirm that the "traditional components of a first appearance," *Coleman*, 754 F.2d at 724, apply to Alabama's criminal process. The comments state: "If [the arrestee] has not been released ..., Rule 4.4(a) insures

procedural compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) [ (right to remain silent and have assistance of counsel) ], as well as provides for the prompt determination of the conditions for release. Subsection (1) assures the formal accuracy of the defendant's name and address in the official records. Subsection (2) assures that the defendant is properly advised of the charges. The rule's requirements can be met by giving to the defendant a copy of the complaint or indictment if he does not already have one. Subsection (3) gives notice to a defendant of the right to counsel and, where applicable, of his right to appointed counsel ..., and of the right to remain silent. It is neither intended nor expected that a determination of the defendant's right to appointed counsel would be made or counsel appointed at the initial appearance. Under subparagraph (4), the judge or magistrate is required to determine the conditions of release."

■ For the reasons given by the Seventh Circuit in *Coleman* and *Armstrong,* this court agrees that a pre-trial detainee has a substantive-due-process right to an initial appearance within a reasonable time after arrest upon a valid warrant. However, this holding does not end the qualified-immunity inquiry. As stated above, a constitutional right must not only exist, it must have been clearly established at the time of the violation.

■ In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear [so] that a reasonable official would understand that what he is doing violated that right." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir.1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness

must be apparent." *Id.* In determining the state of the law, this court must look to "the law originating in [the Eleventh] Circuit, as well as the Supreme Court, the courts of appeals, and the district courts." *Leeks v. Cunningham*, 997 F.2d 1330, 1333 (11th Cir.), *cert. denied*, 510 U.S. 1014, 114 S.Ct. 609, 126 L.Ed.2d 573 (1993). Therefore, for Jackson to defeat the defendants' request for dismissal on qualified-immunity grounds, he must show that the right he is claiming was "clear, factually-defined, [and] well-recognized" at the time of the defendants' conduct. *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir.1989).

■ Here, only one court of appeals, the Seventh Circuit, has held that a pre-trial detainee has a substantive-due-process right to an initial hearing within a reasonable time after arrest upon a valid warrant, and the Eleventh Circuit has remarked that, "the case law of one other circuit cannot settle the law in this circuit to the point of it being 'clearly established.'" *Hansen v. Soldenwagner,* 19 F.3d 573, 578 n. 6 (1994). The Seventh Circuit's decisions in *Coleman* and *Armstrong* are therefore insufficient to establish in this circuit the principle of law that an arrestee has a substantive-due-process right to an initial hearing within a reasonable time after arrest upon a valid warrant.

Also, Supreme Court law does not support the conclusion that, at the time of his arrest, Jackson had a clearly established substantive-due-process right to an initial appearance. Admittedly, as observed above, the Supreme Court wrote in *Gerstein v. Pugh* that, "The consequences of prolonged detention may be more serious than the interference occasioned by arrest." 420 U.S. at 114, 95 S.Ct. at 863. But, as this court has already made clear, the circumstances presented in *Gerstein,* in which the Court condemned a county's policy of confining pre-trial detainees for extended periods without a judicial determination of probable cause, are distin-

guishable from those presented by Jackson for two reasons. First, *Gerstein* involved a challenge to the detention of persons arrested without a valid warrant; Jackson was arrested with a valid warrant. Second, because the Court was addressing warrantless detentions, it applied fourth amendment law; Jackson seeks to assert a fourteenth-amendment substantive-due-process right.

The Supreme Court's decision later in *Baker v. McCollan* is also insufficient to support a finding that, at the time of his arrest, Jackson had a clearly established substantive-due-process right. Although, unlike in *Gerstein,* the Court addressed prolonged pretrial detention with a valid warrant rather than without one, the issue was framed within fourth-amendment law, *see* 443 U.S. at 142–43, 99 S.Ct. at 2694, and this court, expressly relying on *Baker,* has already held that, because Jackson's arrest was pursuant to a warrant issued after a probable-cause determination by a judicial officer, he was not entitled under the fourth amendment to a separate probable-cause hearing after his arrest.

To be sure, the *Baker* Court states in passing that a pre-trial detainee could "not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Id.* at 144, 99 S.Ct. at 2694. But the Court concluded that the applicable limitation on such detention is "the right to a speedy trial." *Id.; see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...."). Jackson does not invoke his speedy-trial right.

In *Baker,* there is further language to the effect that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the ac-

cused of 'liberty ... without due process of law.'" 443 U.S. at 145, 99 S.Ct. at 2695. But this language is not put forward as a legal holding but rather solely as a legal assumption, which the court then uses as an alternative basis to reject the detainee's claim. The Court states that, even *if* this were the law, the detainee could not prevail because his detention was only "three days over a New Year's weekend" and such detention "could not amount to ... a deprivation.[3]"

This court therefore holds that a pre-trial detainee's substantive-due-process right to an initial hearing within a reasonable time after arrest upon a valid warrant was not clearly established at the time of Jackson's arrest. The defendants are entitled to qualified immunity.

■ Finally, Jackson appears at times to claim that he had a substantive-due-process right not only to an initial appearance but also to a minimum-amount appearance bond. This claim is essentially an eighth-amendment claim, *see* U.S. Const. amend. VIII ("Excessive bail shall not be required...."); *see also Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (bail set at higher figure than amount reasonably calculated to fulfill purpose of assuring that accused will stand trial and submit to sentence if found guilty is "excessive" under eighth amendment), and the Supreme Court has made clear that if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under substantive due process. *See County of Sacramento v. Lewis,* 523 U.S. 833, —— n. 5, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998); *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Jackson does not

---

3. In *Clark v. Link,* 855 F.2d 156, 166 (1988), the Fourth Circuit Court of Appeals repeated the above language from *Baker,* and, as in *Baker,* treated the language as merely assumptive and as a basis to reject the detainee's claim (which was based on a three-hour

delay) even if the language were the law. Unlike the Seventh Circuit, therefore, the Fourth Circuit has not held that a pre-trial detainee has a substantive-due-process right to an initial hearing within a reasonable time after arrest upon a valid warrant.

have a valid substantive-due-process claim to a minimum-amount appearance bond.

### b. Procedural Due Process

Jackson contends that Rules 4.3 and 4.4. of the Alabama Rules of Criminal Procedure conferred on him a protected liberty interest in an initial appearance within 72 hours, and that the defendants deprived him of this interest in violation of procedural due process. Because Jackson has failed to establish such a claim, the defendants are entitled to qualified immunity on this claim.

To succeed on a procedural-due-process claim, as sought under § 1983, a plaintiff must establish: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson County v. Cherry*, 980 F.2d 1354, 1357 (11th Cir.1992). "Failure to establish any one of these elements is fatal to [Jackson's] due process claim." *Id.* at 1357. Because the parties do not contest the second element, only the first and third elements are at issue.

 Liberty Interest: "[Procedural due process interests] are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, the States may, "under certain circumstances[,] create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see also Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) ("a person's liberty is ... protected, even when the liberty itself is a statutory creation of the State."). The critical question here is whether the State of Alabama created a liberty interest by providing that a pretrial detainee may not be incarcerated longer than 72 hours without a hearing

before a magistrate or judge. The answer is no.

This court has already held that, as a matter of substantive due process, a person arrested on a warrant has a right to an initial appearance within a reasonable period of time after arrest. Jackson now contends that, by enacting Rules 4.3 and 4.4, the State of Alabama has gone further and given an arrestee a liberty interest in an initial appearance within a specific time frame, that is, 72 hours. To be sure, the language in Rule 4.3 is mandatory: "If such person was arrested pursuant to a warrant issued upon a complaint, he or she *shall be* taken without undue delay, except in no event later than seventy-two (72) hours after arrest, before a judge or magistrate, who shall proceed as provided in Rule 4.4." (Emphasis added). But in *Sandin v. Conner* the Supreme Court expressly repudiated the approach, articulated previously in *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." The *Sandin* Court concluded that the *Hewitt* methodology for identifying due-process interests created by state law was "in practice ... difficult to administer and ... produce[d] anomalous results." —— U.S. at —— n. 5, 115 S.Ct. at 2300 n. 5. Instead, according to *Sandin*, the court must "examine the 'nature' of the interest with respect to interests allegedly created by the State." *Id.* at 480, 115 S.Ct. at 2298.

Under Alabama law, an initial appearance hearing is only a process to an end; the hearing itself will not assure release, with or without an appearance bond. And, as the Supreme Court has made clear, "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741,

1748, 75 L.Ed.2d 813 (1983); *see also Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1570 (10th Cir.1993) ("The mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause."); *Pugliese v. Nelson,* 617 F.2d 916, 924 (2d Cir.1980) (" 'Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural protections.' ") (quoting *Cofone v. Manson,* 594 F.2d 934, 938 (2d Cir.1979)); *Davis v. Alabama State University,* 613 F.Supp. 134, 139 (M.D.Ala. 1985) (Thompson, J.) ("State law and other sources of protected interests do not determine the specific procedures required by the due process clause, but only whether such procedures are guaranteed. The Constitution determines the specific procedures required, and Davis concedes that the Constitution does not guarantee appeal to the Board. The denial of an appeal to the Board did not violate Davis's right to procedural due process.") (citation omitted).

In *Shango v. Jurich,* 681 F.2d 1091, 1101 (1982), the Seventh Circuit succinctly explained why it does not necessarily follow that the mere fact that a State has afforded someone a right to hearing means that he has an interest, protected by the due process clause, in that hearing: "A basic problem, in terms of cogent federal constitutional analysis, with maintaining that one has an entitlement to a state created procedural device such as a hearing is that the dimensions of the procedural protections which attach to state law entitlements are defined by federal standards.... If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. Reductio ad absurdum." The appellate court further observed that, "Constitutionalizing every state procedural right would stand any

due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as a substantive end in itself." *Id.*

Jackson's procedural-due-process claim is very similar to a claim addressed and rejected by the Second Circuit Court of Appeals in *Watson v. City of New York,* 92 F.3d 31 (1996). There, the plaintiff argued that, while in *County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991), the Supreme Court extended *Gerstein* and set 48 hours as the presumptive outside limit for confinement prior to a probable-cause hearing, the State of New York had created a liberty interest in arrestees being released, or at least arraigned, within 24 hours by enacting a statute to that effect. In rejecting this claim for essentially the same reasons this court gives above, the Second Circuit noted that "whether an arraignment is adequately 'prompt' to satisfy the Fourth Amendment ... is a federal issue that is not affected by [state law]." 92 F.3d at 38.

This court therefore concludes that Jackson's procedural-due-process claim to an initial appearance is not viable. The court also adds that even if he had such a claim, it was not clearly established at the time of his arrest by the defendants.

At times, Jackson appears to attempt to draw a distinction between a claim to a liberty interest in an initial appearance hearing and a claim to a liberty interest in a minimum-amount appearance bond. Under Alabama law, as stated, an arrestee is entitled to a minimum-amount appearance bond if the State fails to give him an initial appearance within 72 hours. The court has already explained why an arrestee does not have a federally protected liberty interest in an initial appearance, and thus the remaining question is whether he has such an interest in a minimum-amount appearance bond. Again, the language of Rule 4.3 is mandatory: "If the person arrested cannot meet the conditions of re-

lease and has not been taken before a judge or magistrate in the case of a warrant issued on a complaint, ... without undue delay, except in either case in no event later than seventy-two (72) hours after arrest ..., such person *shall be* released upon execution of an appearance bond in the minimum amount required." (Emphasis added.) But as the Supreme Court made clear in *Sandin,* the issue is not whether the language is mandatory but rather what is "the 'nature' of the interest with respect to interests allegedly created by the State." 515 U.S. at 480, 115 S.Ct. at 2298.

Here, any state-created interest an arrestee has in the minimum-amount appearance bond is derivative of the interest the State has given him in the initial appearance, for the right to the minimum-amount appearance bond is merely a remedy or sanction for failing to afford an arrestee an initial appearance. It therefore follows that if an arrestee has no constitutionally protected liberty interest in the state-created right (the initial appearance), he cannot have a constitutionally protected liberty interest in the remedy fashioned by the State to address violations of that state-created right (the minimum-amount appearance bond). *Cf. Watson v. City of New York,* 92 F.3d at 37 (pretrial detainee has no liberty interest in release compelled by state statute if arraignment not held within 24 hours).

Moreover, even if Jackson had a cognizable federal liberty interest in either an initial appearance or a minimum-amount appearance bond, that interest was not clearly established at the time of his arrest.

■ Adequate Remedy: It appears that, even if Jackson had a federally protected liberty interest in an initial appearance or a minimum-amount appearance bond, he still has an adequate remedy at state law to redress any impairment of that interest: a damages claim for false

imprisonment. In Alabama, "[f]alse imprisonment consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty," *Big B, Inc. v. Cottingham,* 634 So.2d 999, 1001 (Ala.1993) (citing 1975 Code of Alabama § 6–5–170), "without proper legal authority." *R.J.D. v. Vaughan Clinic, P.C.,* 572 So.2d 1225, 1230 (Ala.1990) (Adams, J., concurring in part and dissenting in part). To be sure, because the defendants are state officials, they would be immune from any false imprisonment suit. *See Lancaster v. Monroe County,* 116 F.3d 1419, 1430 (11th Cir. 1997); *Alexander v. Hatfield,* 652 So.2d 1142, 1144 (Ala.1994). However, the Eleventh Circuit has made clear that "the sovereign immunity enjoyed by [county and government officials] [does] not render [plaintiff's] state law remedy inadequate." *Rittenhouse v. DeKalb County,* 764 F.2d 1451, 1459 (11th Cir.1985); *see also Powell v. Georgia Dept. of Human Resources,* 114 F.3d 1074, 1082, n. 11 (11th Cir.1997) (plaintiff's argument that "postdeprivation process is inadequate because the State has invoked sovereign immunity" as to tort claims is foreclosed by *Rittenhouse*). Because Jackson could file a false imprisonment claim, he has access to an adequate post-deprivation remedy and thus has not established a violation of his procedural due process rights.[4]

Finally, as stated, a close reading of Jackson's complaint reflects that his real objection is that he was denied an appropriate appearance bond for release. To be sure, Jackson has an eighth amendment right to a reasonable bond. But Jackson has not based his procedural-due-process claim on the violation of the eighth amendment.

**B. Turning over the Car Keys to Someone Else**

■ As stated, Jackson claims that the defendants violated the fourteenth amend-

---

**4.** It should also be noted that Jackson's most immediate remedy during his incarceration was to have filed a habeas petition in state

court seeking enforcement of Rule 4.3 and Rule 4.4.

ment by turning over his car keys to Johnson, his girlfriend, after his arrest. The defendants respond that they are entitled to qualified immunity on this claim. The court agrees with the defendants.

Jackson contends that the defendants' action violated his right to procedural due process. First, it is important to note that Deputy Sheriff Upshaw is the only defendant who gave the car keys to Johnson. Therefore, the remaining defendants are clearly entitled to qualified immunity on this claim because they are not even factually implicated in the claim.

And Deputy Upshaw's actions did not violate Jackson's procedural-due-process rights. First, it is important to emphasize that all Upshaw did was turn over the car keys, and thus the possession of the car, to Jackson's girlfriend pending Jackson's incarceration; Upshaw did not engage in any adjudication of ownership, nor did he in any way impair whatever interest Jackson may have had in the car. Second, the evidence is undisputed that the car's title was not in Jackson's name but rather in the name of his and Johnson's daughter. Therefore, whatever interest both Jackson and Johnson had in the car was through their minor daughter, and was essentially the same; they both seemingly could assert a right to the car keys. The turning over of the car keys to Johnson while Jackson was incarcerated simply did not violate any of Jackson's procedural-due-process rights. Moreover, even if such right were violated, the right was not clearly established at the time of the alleged violation. Upshaw is entitled to qualified immunity on this claim.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that the defendants are entitled to summary judgment. An appropriate judgment will be entered.